NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240020-U

NO. 4-24-0020

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Adams County |
| MICHAEL P. MILSAP, | ) | No. 23CF740 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Michael P. Milsap, appeals the trial court's order denying his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3    I. BACKGROUND

¶ 4    On December 19, 2023, the State charged defendant with unlawful possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2022)) and unlawful possession of firearm ammunition by a felon (*id.*).

¶ 5    The same day, the State petitioned to deny defendant's pretrial release under

section 110-6.1 of the Code. The State asserted defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community.

¶ 6    A hearing was held the same day. The State attached a certified police report as evidence in support of its petition. According to the certified police report:

"On 12/16/2023 at 2302 I was in the area of 6th and Washington. I observed a dark colored Dodge Durango flee from 6th and Washington at a high rate of speed. I was unable to conduct a traffic stop on the vehicle. At 2305 I was dispatched to 609 Washington for shots fired, as well as, 613 Washington for a disturbance. Upon arrival at 613 Washington, I observed a male, later identified as [defendant], walk around the east side of residence before making contact with me. [Defendant] denied that there was an issue at the residence and was extremely combative towards law enforcement. [Defendant] stated that he was in his garage all night after coming home from a graduation party. Also While at 613 Washington officers spoke with Rochelle Milsap, [defendant's] wife, Rochelle Milsap stated that she did call for the disturbance, but stated that she had no clue what was happening and that she had called back and stated she no [l]onger needed police. Both Rochelle and [defendant] stated that they had no clue what had happened and that they did not hear a gun shot. The disturbance was unfounded. I then made contact with Tim Mandrell and Sorita Selmen, who were the callers from the shots

fired call. Mandrell stated that he heard arguing outside of his home and looked out the window. Mandrell stated he saw a dark colored Dodge Durango parked at 6th and Washington. Mandrell stated that the driver of the Dodge Durango and a male known to him as [defendant] were walking towards each other, before [defendant] shot a singular round from a handgun. Mandrell stated that as [defendant] shot[,] the driver from the Dodge Durango ducked down and ran back to the vehicle. Mandrell stated that he thought he heard a second gun shot but he and Selmen discovered that the noise had came from the television. I then collected video footage from a home surveillance camera at 604 Washington. While at 604 Washington I spoke with James Valentine. Valentine stated that he had heard an argument outside but stated it was not very loud, and also stated that he did not hear a shot, or see the vehicle drive away. In the video you can see the Dodge Durango drive west bound on Washington street before making a U-turn in the intersection of 6th and Washington.

The vehicle then parked on Washington St. In the video the driver of the vehicle and [defendant] walk towards each other on Washington St. A flash could then be seen in [defendant's] hands. The driver of the vehicle then ducks down, before running back to the vehicle and the vehicle flees from the area. In the video [defendant] can be seen walking back to 613 Washington. A

singular .380 shell casing was located roughly in the same area in [defendant] was standing at the time the flash could be seen coming from his hand. The shell casing was located at 0212 hours on 12/27/2023.

On 12/18/2023 at approximately 1030 hours officers executed a search[ ] warrant at 613 Washington. While executing the search warrant a Rug[e]r .380 LCP was located inside of a white cooler inside of the garage. *** While searching the residence, 100 .22 long rifle rounds were also located and collected. The ammunition was located on a shelf at the top of a closet in [defendant's] primary bedroom. ***."

¶ 7        The trial court stated it had reviewed the pretrial services report. According to that report, defendant had resided with his wife at 613 Washington Street, Quincy, Illinois, for 30 years. Defendant operated his own construction business, earning $80 per hour working 60-70 hours per week. The report lists over 20 traffic offenses beginning in 1993. Defendant's criminal history in Adams County includes the following: two possession-of-cannabis convictions in 1993, resisting/obstructing a peace officer in 1993, criminal trespass to land in 1993, possession of cannabis in 1994, unlawful delivery of controlled substance for which he was sentenced to six years in the Illinois Department of Corrections (DOC) in 1995, criminal damage to property in 1996, aggravated battery in 1996 for which he was sentenced to five years in the DOC, unlawful possession of a controlled substance in 1996, fighting in 2000, possession of a controlled substance for which defendant was sentenced to three years in the DOC in 2001, fighting in 2002, possession of drug paraphernalia and cannabis in 2010, aggravated driving under the

influence for which he was sentenced to two years in the DOC, resisting a peace officer in 2010, domestic battery in 2011, and fighting in 2015. There were also multiple traffic offenses in Ohio from 2004 to 2007.

¶ 8        The author reported the Revised Virginia Pretrial Risk Assessment Instrument, performed by Pretrial Services, identified defendant's risk of pretrial misconduct as 6 out of a possible score of 0-14. Based on statistical norms, the assessment estimates a 90% probability defendant will appear for future hearings and no offenses will occur during the pendency of the case. The pretrial officer recommended defendant be placed on pretrial supervision.

¶ 9        Defense counsel presented no evidence but argued defendant should be permitted pretrial release. Counsel emphasized defendant owned his own business with four to five employees. Counsel reported defendant had minor grandchildren whom he and his wife looked after while their parents worked and his wife had surgery scheduled the next month. Counsel further emphasized the State had not charged defendant with an offense based on the discharge of a firearm. Counsel argued conditions could guarantee defendant would not commit future criminal offenses, such as wearing a global-positioning-system device and participating in pretrial services.

¶ 10       The trial court granted the State's petition to detain defendant. In so doing, the court found the following:

> "The defendant is charged with possession of a firearm. He is seen
> on video discharging a firearm[,] *** which is the possession of
> the firearm *** part of the charge. The fact that he is seen
> discharging that firearm and other people [report] hearing the
> discharge of that firearm provides that the defendant would be—

and the fact that he discharged it towards another individual who was present and towards a vehicle, the Court finds that he would, by clear and convincing evidence, *** be a danger to [a] particular member of the public or the public at large because [defendant] is a felon, has several felony convictions, has been to the [DOC] and, in fact, a gun was found after a search warrant along with some ammunition to another weapon. The Court does not believe that there are any terms of pretrial release that could be ordered that in this case would alleviate the need to detain [defendant]."

¶ 11 The trial court issued a written order on the State's verified petition for detention. The court did so by checking boxes on a preprinted form. The court adopted its verbal findings and found by clear and convincing evidence the proof is evident or the presumption great defendant committed an offense for which pretrial release may be denied, defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, and no condition or combination of conditions could mitigate that threat. The court further checked boxes to summarize the statutory factors on which it based its finding of dangerousness and its determination no condition or combination of conditions could mitigate that threat: the nature and circumstances of the offenses charged, defendant's criminal history indicative of violent, abusive, or assaultive behavior, the identity of any person or persons to whose safety the defendant is believed to pose a threat, and whether defendant is known to possess or have access to a weapon.

¶ 12 This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14 On December 29, 2023, defendant filed a notice of appeal challenging the order denying his pretrial release under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which he asks this court to reverse the order denying his release. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." On the form, defendant asserted three grounds of relief and provided argument under each ground. Defendant also filed a memorandum supporting his appeal.

¶ 15 The first checked box on defendant's notice of appeal sets forth the argument the State did not prove by clear and convincing evidence defendant poses a real and present threat to the safety of any persons or persons or the community. In support, defendant wrote the following:

> "The Pretrial Services Report recommended the defendant be placed on pretrial supervision, not detention. Defendant has two convictions involving violence but the last one was a misdemeanor in 2011. Defendant is not [a] threat to safety of any identifiable person or persons or the community. Defendant was not a respondent in any civil stay away order/no contact orders. The defendant is not on parole or any other type of court supervision at the time of the hearing."

In his memorandum, defendant added the fact he possessed a gun and ammunition is not alone sufficient to prove defendant posed a threat and questioned the State's reliance on uncharged conduct to show defendant was dangerous. Defendant further emphasized his criminal history is

largely nonviolent.

¶ 16      Under the Code, all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). To deny defendant pretrial release under section 110-6.1(e)(1)-(3) of the Code (*id.* § 110-6.1(e)(1)-(3)), as the State sought here, the State must prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." The Code gives the trial court broad discretion in choosing what factors to consider in making this determination and lists some factors a court may consider. See *id.* § 110-6.1(g). This nonexhaustive list includes, in part, (1) the nature and circumstances of the charged offense, including whether the offense is one of violence, involves a weapon, or a sex offense; (2) defendant's history and characteristics, including evidence of a criminal history indicative of violent, abusive or assaultive behavior; (3) identity of person or persons to whose safety the defendant is believed to pose a threat; (4) statements made or attributed to defendant; (5) defendant's age and physical condition; and (6) whether defendant is known to have access to any weapon. *Id.*

¶ 17      This court reviews the question of whether a criminal defendant is properly denied pretrial release for an abuse of discretion. See *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. We will find an abuse of discretion when the decision is unreasonable, arbitrary, or fanciful or when we find no reasonable person would agree with the trial court's decision. *Id.* ¶ 10.

¶ 18      We need not decide, as defendant argues, whether the offense alone may support a finding the defendant's release poses a threat as the trial court did not rely on that fact alone when finding the State sufficiently proved this factor. Defendant is charged with unlawful possession of a weapon and ammunition. The circumstances surrounding the offense reveal other

facts supporting the finding of dangerousness. There is witness testimony and video evidence showing defendant, despite being barred by law from possessing a weapon and ammunition, not only possessed a weapon and ammunition but also fired a weapon in the direction of another person. There is also proffered evidence defendant's wife called police due to a disturbance and then canceled the call. Defendant has a record of violent behavior, including a 1996 aggravated battery, a 2011 domestic battery, and three "fighting" convictions between 2000 and 2015. The court considered the statutory factors of section 110-6.1(g) (725 ILCS 5/110-6.1(g) (West 2022)), rejecting some and accepting others. While the offenses in defendant's past are older, given the court's consideration of the statutory factors and analysis of the facts and circumstances of the case, we cannot find the court's determination to be fanciful, arbitrary, or unreasonable.

¶ 19      Defendant's next argues in his notice of appeal the State did not prove by clear and convincing evidence no condition or combination of conditions can mitigate the real and present threat to the safety of the community. In support, defendant wrote the following:

> "Defendant is 48 years old, married[,] and is self-employed in construction business. Other than a littering charge in 2019[,] *** defendant has no criminal dispositions since 2015. The defendant has a medical condition, [Crohn's] disease[,] which is being treated, as well as high blood pressure. The defendant has been married for over 30 years. The court did not consider alternatives such as home confinement or electronic monitoring [which] would allow defendant's continued employment and ability to seek treatment."

In his memorandum, defendant argues the Code sets forth multiple mandatory and permissible conditions a trial court may impose instead of pretrial detention, but the State only addressed one of those conditions, the prohibition against possession of a firearm, and the court here made one conclusory statement on the issue. Defendant further relies largely on *People v. Stock*, 2023 IL App (1st) 231753, to support his claim.

¶ 20  To obtain pretrial detention under the dangerousness standard, the State must also prove by clear and convincing evidence no condition or combination of conditions set forth in section 110-10(b) (725 ILCS 5/110-10(b) (West 2022)) can mitigate the real and present threat defendant's release poses to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(e)(3)(i) (West 2022). Section 110-10(b) lists discretionary conditions to be considered, including refraining from possessing a firearm (*id.* § 110-10(b)(2)), being placed under direct supervision of a pretrial services agency or probation department in home confinement with or without electronic monitoring (*id*. § 110-10(b)(5)), and refraining from approaching or communicating with a particular person (*id.* § 110-10(b)(3)). A detention order must contain a written finding summarizing why less restrictive conditions would not mitigate the threat. *Id.* § 110-6.1(h)(1).

¶ 21  We do not find defendant's emphasis on the fact the State argued against only one of the conditions listed in section 110-10(b) renders the no-condition-or-combination-of-conditions factor unproved. There is no requirement in section 110-6.1 the State "argue" against each possible condition. Instead, the mandate is the State proffer evidence to establish clearly and convincingly, in part, no condition or combination of conditions can mitigate the real and present threat. See *id.* § 110-6.1(e)(3)(i). Here, it is not unreasonable for the trial court to have concluded the State did so. The two conditions defendant argues that could have mitigated any

threat are home confinement and electronic monitoring. The proffer on which the trial court relied in finding the State sufficiently proved this factor includes evidence showing defendant committed the unlawful-possession-of-a-weapon offense while in his own home and just outside his home. In addition, the reporting officer responded to a call for a disturbance at defendant's home and the shots-fired call at a neighboring address. It is not an abuse of discretion to conclude the evidence clearly and convincingly showed a condition of home confinement and electronic monitoring would not mitigate the threat to the safety of any person or persons or the community.

¶ 22        We further find unconvincing defendant's argument the trial court's ruling regarding the conditions was insufficient. While the court, at the hearing, directed only one sentence regarding this factor, finding no "terms of pretrial release *** could be ordered that in this case would alleviate the need to detain [defendant]," it did so after summarizing the facts and circumstances of the offense. The court noted defendant not only unlawfully possessed a firearm but also fired the firearm in the direction of a person. In addition, the verbal statement at the hearing was not the end of the court's explanation of its ruling. In its written order, the court stated it based its determination on defendant's criminal history, which included violent, abusive, or assaultive behavior, the identity of a person or persons to whose safety the defendant is believed to pose a threat, and the fact defendant possessed a weapon.

¶ 23        Defendant's case law supporting this claim is distinguishable and unpersuasive. In *Stock*, the First District applied the manifest-weight-of-the-evidence standard to find the trial court erred in concluding no condition or combination of conditions would mitigate the threat. *Stock*, 2023 IL App (1st) 231753, ¶¶ 12, 15-19. The First District concluded the State had relied only on the factual proffer about the circumstances of the charged offense—aggravated battery

based on the defendant's alleged firing of a gun at his wife and injuring her as she attempted to remove her belongings from the marital home while seeking a divorce. *Id.* ¶¶ 5, 18. The First District concluded more was required than proof of the basic elements of the offense to prove no conditions could mitigate the threat of the defendant's pretrial release. *Id.* ¶ 18. The court further noted proof of that element could not be inferred "*particularly* in a case like this one where defendant has no other criminal history beyond the instant case and the record before us demonstrates that [the] defendant has otherwise been an upstanding and law-abiding member of the community." (Emphasis added.) *Id.* ¶ 19. Here, unlike in *Stock*, there is a lengthy criminal history that includes violent behavior and repeated incarcerations.

¶ 24 The last argument defendant asserts in his notice of appeal challenges the sufficiency of the trial court's detention order—an order created using a preprinted form:

"Pursuant to 725 ILCS 5/110-6.1(h)(1) the Court's order for detention shall '(1) make a written finding summarizing the reasons … the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat … (to others), based upon specific articulable facts of the case, or prevent the defendant's willful flight from prosecution.'

The Court's order does not make a written finding summarizing the reasons for detention and does not state in the written order why less restrictive conditions would not avoid a real and present threat. The Court made no written findings but checked a form order with boxes citing the statute without stating

any specific finding."

In his memorandum, defendant relies on two cases in support: *Stock* and *People v. Earnest*, 2024 IL App (2d) 230390.

¶ 25    As shown above, section 110-6.1(h)(1) mandates courts issuing detention orders make written findings "summarizing" the reasons for concluding defendants should be denied pretrial release, including reasons why less restrictive conditions would not mitigate a real and present threat to the safety of any person, persons, or the community. 725 ILCS 5/110-6.1(h)(1) (West 2022). No language within this section bars a trial court from making those written findings by using a preprinted form.

¶ 26    Defendant's case law does not establish error as it does not show a trial court may not satisfy section 110-6.1(h)(1) by use of a preprinted form and does not establish the court's summary of reasons was insufficient. *Stock* involves the use of a preprinted form; however, the decision turned not on the sufficiency of the form or the written order but on the insufficiency of the evidence presented at the hearing. See *Stock*, 2023 IL App (1st) 231753, ¶¶ 15-20. The only reason provided in the written order in *Stock* was also the only evidence provided by the State: "The defendant shot a firearm at the complaining witness." *Id.* ¶ 20. The court had already found that fact alone, an element of the charged offense and the only basis for the State's claim, was insufficient to support a finding no conditions would mitigate the threat. *Id.* ¶ 19. As in *Stock*, the written order in *Earnest* was not insufficient solely because the summary of reasons was insufficient but because the State presented no evidence on whether any condition or combination of conditions would mitigate the risk of willful flight. *Earnest*, 2024 IL App (2d) 230390, ¶ 27 (finding the record "barren"). The Second District found the court failed to address any evidence regarding whether conditions would mitigate willful flight as there was no such

evidence proffered. *Id.* ¶ 28. Only then was the "checkbox boilerplate order," containing no summary of reasons why less restrictive conditions would not prevent willful flight, insufficient under section 110-6.1(h)(1). See *id.* ¶¶ 27-28.

¶ 27        In contrast to the facts in defendant's case law, the State proffered evidence on this issue and the trial court made written findings expressly directed toward the conditions element. The court's written order expressly adopted its oral findings. At the hearing, the court summarized the facts of the offense, the unlawful possession of a firearm, as well as the fact defendant fired the firearm at another person. As additional support for its finding no condition or conditions could mitigate the threat, the court further checked the boxes highlighting defendant's criminal history and found such history included violent and abusive behavior, defendant was a threat to a particular person, and defendant had access to a weapon. The fact the court checked some boxes, boxes with reasons supported by the record, and not others, shows the court used its discretion in weighing the evidence and in providing the reasons for its findings. The court's order complies with section 110-6.1(h)(1) of the Code.

¶ 28                         III. CONCLUSION

¶ 29        We affirm the trial court's judgment.

¶ 30        Affirmed.